1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8
     Maria Vasquez,                      )
9                                        )
              Plaintiff,                  )          No. CIV 19-536-TUC-CKJ
10                                        )
     vs.                                  )
11                                        )          ORDER
     Ameriprise Insurance Company,        )
12                                        )
              Defendant.                  )
13   _____)

14          Pending before the Court is the Motion for Summary Judgment (Doc. 16) filed by

15   Defendant Ameriprise Insurance Company ("Ameriprise").   Plaintiff Maria Vasquez

16   ("Vasquez") has filed a response and Ameriprise has filed a reply.

17

18   *Factual and Procedural Background*

19          On or about December 31, 2018, Vasquez's polybutylene plumbing system ruptured

20   causing water damage to Vasquez's residence.  Defendant's Statement of Facts ("DSOF")

21   (Doc. 17, ¶¶ 1-2).  At the time, Vasquez was insured by Ameriprise under policy number

22   HI01975533 ("Policy").  *Id*. at ¶ 1.  This Policy covered Vasquez's residence.  *Id*.  Vasquez

23   replaced the entire plumbing system, including portions that were not leaking.  *Id*. at ¶ 4.

24   Ameriprise denied coverage of the replacement costs.  Complaint (Doc. 1-3, ¶ 6).

25          The Policy covers property damage which is defined as "physical injury to,

26

27

28

destruction of or loss of use of tangible property." DSOF, Ex. A (Doc. 17-1, p. 15 of 27).[1]

The Policy states:

> **Exclusions**
>
> We do not cover loss caused directly or indirectly by any of the following, whether or not any other cause or happening contributes concurrently or in any sequence to the loss:
>
> * * * * *
>
> Under Dwelling and Other Structures Coverages, **we** do not cover loss resulting directly or indirectly from:
>
> > * * * * *
> >
> > 3.    faulty, inadequate or defective:
> >
> > > a) construction, reconstruction, repair, remodeling or renovation;
> > > b) materials used on construction, reconstruction. repair, remodeling or renovation;
> > > c) design, workmanship, specifications;
> > > d) siting, surveying, zoning, planning, development, grading or compaction; or
> > > e) maintenance of a part or all of the residence premises or any other property;
> >
> > 4.    wear and tear; marring or scratching; deterioration; damage which occurs over a period of time, or from lack of normal maintenance; defective materials and workmanship; inherent vice; latent defect; mechanical breakdown; rust; mold; fungus; wet or dry rot; discharge, dispersal or release of **pollutants** or **contaminants**; smog; smoke from agricultural smudging or industrial operations; settling, cracking, shrinkage, bulging or expansion of pavement, patios, foundations, walls, floors, roofs or ceilings; birds, vermin. rodents, insects or domestic animals.
> >
> > > If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, **we** cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. **We** do not cover loss to the system or appliance from which this water escaped;
> >
> > * * * * *

*Id*. at 19 of 27, *emphasis in original*.  Vasquez acknowledges the Policy "does not cover replacement of a defective system, [but asserts] it does provide coverage to access the

---

[1]The Court references the ECF pagination in referring to the exhibits attached to the DSOF.

1   system which required nearly $30,000 to access, remove and replace." Complaint (Doc. 1-3,

2   ¶ 5).

3           Vasquez filed a Complaint against Ameriprise alleging claims of breach of contract

4   and breach of the duty of good faith and fair dealing in the Pima County Superior Court.

5   Complaint (Doc. 1-3).  Vasquez seeks "tear-out" coverage for the cost of accessing the

6   entire system for replacement.  The action was removed to this Court.

7           Ameriprise has filed a Motion for Summary Judgment ("MSJ") (Doc. 16) in which

8   Ameriprise argues the Policy does not provide coverage for the replacement of the plumbing

9   system.  Vasquez has filed a response; she argues the Policy provides coverage to access the

10  plumbing system.  Ameriprise has filed a reply.

11

12  *Summary Judgment Legal Standard*

13          Summary judgment may be granted if the movant shows "there is no genuine dispute

14  as to any material fact and the movant is entitled to judgment as a matter of law."

15  Fed.R.Civ.P. 56(c).  The moving party has the initial responsibility of informing the court

16  of the basis for its motion, and identifying those portions of "the pleadings, depositions,

17  answers to interrogatories, and admissions on file, together with the affidavits, if any,"

18  which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*

19  *v. Catrett*, 477 U.S. 317, 323 (1986); *Scheuring v. Traylor Bros.*, 476 F.3d 781, 784 (9th

20  Cir. 2007).

21          Once the moving party has met the initial burden, the opposing party must "go

22  beyond the pleadings" and "set forth specific facts showing that there is a genuine [material]

23  issue for trial." *Celotex Corp.*, 477 U.S. at 248, *internal quotes omitted*; *see also United*

24  *States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012) ("a plaintiff

25  cannot rely on mere allegations but rather must "set forth" by affidavit or other evidence

26  "specific facts").  The nonmoving party must demonstrate a dispute "over facts that might

27  affect the outcome of the suit under the governing law" to preclude entry of summary

28

1   judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  Further, the disputed

2   facts must be material. *Celotex Corp.*, 477 U.S. at 322-23.   Further, "a party cannot

3   manufacture a genuine issue of material fact merely by making assertions in its legal

4   memoranda." *S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter*

5   *Kiddle & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982).

6          A dispute over material facts must be genuine. *Anderson*, 477 U.S. at 248, 106 S.Ct.

7   at 2510.  A dispute about a material fact is genuine if "the evidence is such that a reasonable

8   jury could return a verdict for the nonmoving party." *Id.*  A party opposing a properly

9   supported summary judgment motion must set forth specific facts demonstrating a genuine

10  issue for trial.  *Id.*  "[M]ere allegation and speculation do not create a factual dispute for

11  purposes of summary judgment." *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016)

12  (citation omitted).   "If the evidence is merely colorable or is not significantly probative,

13  summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.  However, the evidence

14  of the nonmoving party is to be believed and all justifiable inferences are to be drawn in his

15  favor. *Id.* at 255.  Further, in seeking to establish the existence of a factual dispute, the non-

16  moving party need not establish a material issue of fact conclusively in his favor; it is

17  sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

18  parties' differing versions of the truth at trial." *Giles v. Gen. Motors Acceptance Corp.*, 494

19  F.3d 865, 872 (9th Cir. 2007) (citation omitted).

20         Additionally, the Court is only to consider admissible evidence.  *Moran v. Selig*, 447

21  F.3d 748, 759-60 (9th Cir. 2006) (pleading and opposition must be verified to constitute

22  opposing affidavits); *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1991)

23  (declarations and other evidence that would not be admissible may be stricken).  Moreover,

24  "[a]t the summary judgment stage, [courts] do not focus on the admissibility of the

25  evidence's form.  [They] instead focus on the admissibility of its contents."  *Fraser v.*

26  *Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).    The Court will only consider the admissible

27  evidence that is supported by specific facts that may show a genuine issue of material fact.

28

1   *See Anderson*, 477 U.S. at 248 (1986).

2

3   *Interpretation of an Insurance Policy*

4         Under Arizona law, the interpretation of an insurance contract is a question of law.

5   *Sparks v. Republic Nat. Life Ins. Co.*, 132 Ariz. 529, 534 (1982).   "Provisions of an

6   insurance contract are construed according to their plain and ordinary meaning from the

7   standpoint of an 'average layman who is untrained in the law or the field of insurance.'"

8   *London Bridge Resort LLC v. Illinois Union Ins. Co. Inc.*, No. CV-20-08109-PCT-GMS,

9   2020 WL 7123024, at *1 (D. Ariz. Dec. 4, 2020), *quoting Liristis v. Am. Fam. Mut. Ins. Co.*,

10   204 Ariz. 140, 143–44 (App. 2002); *Liberty Ins. Underwriters, Inc. v. Weitz Co., LLC*, 215

11   Ariz. 80, 83 (App. 2007) (written terms of insurance contracts are construed to effectuate

12   the parties' intent and to protect the reasonable expectations of an insured).   "[I]f the

13   intention of the parties is clear from such a reading, there is no ambiguity."   *Harris v.*

14   *Harris*, 195 Ariz. 559, 562 (App. 1999).   Any "ambiguity in an insurance policy will be

15   construed against the insurer"; however, this rule applies only to provisions that are

16   "actually ambiguous."   *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 199 Ariz. 43, 46 (App.

17   2000), *internal citations and quotations omitted*.

18         If a policy provision is susceptible to different constructions, a court must first

19   attempt to determine the meaning of the clause by "examining the purpose of the [provision]

20   in question, the public policy considerations involved and the transaction as a whole."   *Id*.,

21   *citation omitted*; *see also Arizona Prop. & Cas. Ins. Guar. Fund v. Helme*, 153 Ariz. 129,

22   134-35 (Ariz.1987).   *quoting Ohio Cas. Ins. Co. v. Henderson*, 189 Ariz. 184, 186 (1997)).

23         Additionally, an insured generally "bears the burden to establish coverage under an

24   insuring clause, and the insurer bears the burden to establish the applicability of any

25   exclusion."   *Bhattacharya v. HISCOX Ins. Co.*, No. CV-19-02780-PHX-ESW, 2020 WL

26   6363726, at *2 (D. Ariz. Oct. 29, 2020), *quoting Keggi v. Northbrook Prop. and Cas. Ins.*

27   *Co.*, 199 Ariz. 43, 46 (App. 2000).

28

1

2    *The Policy – Anti-Concurrent Cause Exclusion*

3         The first statement under the Exclusions portion of the Policy states:

4         We do not cover loss caused directly or indirectly by any of the following, whether
          or not any other cause or happening contributes concurrently or in any sequence to
5         the loss[.]

6    DSOF, Ex. A, p. 19 of 27.  Ameriprise may limit its liability with an anti-concurrent

7    causation lead-in clause to the exclusions.  *Millar v. State Farm Fire & Cas. Co.*, 167 Ariz.

8    93 (App. 1990); *Cooper v. Am. Fam. Mut. Ins. Co.*, 184 F. Supp. 2d 960, 962 (D. Ariz.

9    2002).  Vasquez does not address this principle in her Response.  In other words, neither a

10   well-taken legal argument nor disputed material evidence has been presented to the Court.

11   In light of the applicable case law and the express language in the Policy, the Court finds,

12   if Vasquez's loss is excluded pursuant to either Exclusion 3 or Exclusion 4, Ameriprise need

13   not cover the loss.

14

15   *The Policy – Polybutylene Pipes as "Defective"*

16         As applicable in this case, Exclusion 3 of the Policy excludes coverage for a loss

17   caused by faulty, inadequate or defective construction or faulty, inadequate or defective

18   materials used in construction, design or specifications.   Additionally, Exclusion 4 states

19   losses caused by defective materials and workmanship are not covered under the Policy.

20   Defective can mean having a flaw or defect or imperfect in form, structure, or function.

21   Defective, Merriam Webster Dictionary (Last visited Mar. 30, 2021).  Also, a product can

22   be defined as defective when it is not fit for the ordinary purposes for which it is sold and

23   used.  Defective, Black's Law Dictionary (5th ed. 1981); *see also* Defective, Black's Law

24   Dictionary (11th ed. 2019) ("containing an imperfection or shortcoming in a part essential

25   to the product's safe operation"). Vasquez asserts through her expert witness that

26   polybutylene pipes are "inherently defective." Further, Ameriprise appears to agree, stating:

27   "Accepting Plaintiff's position that the polybutylene plumbing system was defective, her

28

1    house has now been greatly improved – it now has an entirely new, non-defective plumbing

2    system." MSJ, p. 9.  In these circumstances, the Court finds the pipes are defective within

3    the meaning of Exclusion 3 and Exclusion 4.

4

5    *The Policy – Exclusion 3*

6            Exclusion 3 of the Policy indicates that the insurance agreement between the parties

7    provided that Ameriprise did not cover losses resulting directly or indirectly from faulty,

8    inadequate or defective "a) construction, reconstruction, repair, remodeling or renovation;

9    b) materials used on construction, reconstruction. repair, remodeling or renovation; c)

10   design, workmanship, specifications . . ." DSOF, Ex. A, p. 19 of 27.  The plain and ordinary

11   meaning of this provision is that Vasquez's losses caused directly or indirectly from the

12   defective polybutylene pipes were not covered by the Policy.  Further, this Exclusion does

13   not contain an exception similar to that contained in Exclusion 4.  Indeed, had the parties

14   agreed, the insurance agreement could have included a similar "tear-out" provision as to

15   Exclusion 3.  As it is, the plain and ordinary language of the Policy only applies to

16   Exclusion 4; there is no similar language in Exclusions 1-3 or 5-9.  There is no ambiguity

17   to present a need for the Court to attempt to determine the meaning of the clause – the

18   meaning is already clear.

19           The losses in this case (the need for repair/replacement of plumbing, water damage,

20   and tear-out costs) were all caused directly or indirectly by the defective polybutylene pipes.

21   Because Exclusion 3 makes clear Ameriprise does not cover losses caused directly or

22   indirectly from defective construction or materials, Exclusion 3 precludes coverage.  In

23   arguing this Court should find there is a material factual dispute as the court did in

24   *Guadiana v. State Farm Fire & Cas. Co.*, 2008 WL 4078767 (D.Ariz. 9/2/2008), Vasquez

25   does not acknowledge that the court in *Guadiana* did not discuss whether any anti-

26   concurrent cause exclusion precluded coverage.  Indeed, a review of the policy in *Guadiana*

27   indicates that, while similar language was included in that policy, it was not identical to the

28

1   language in the Policy of this case.  *See Guadiana v. State Farm Fire & Cas. Co.* CV 07-

2   326-FRZ-LAB, Defendant's State of Facts (247-3, pp. 12-14 of 47).[2]

3          Moreover, the anti-concurrent clause states Ameriprise does not cover a loss caused

4   directly or indirectly . . . whether or not any other cause or happening contributes

5   concurrently or in any sequence to the loss."  DSOF, Ex. A, p. 19 of 27.  In an unpublished

6   memorandum decision, the Court of Appeals of Arizona has recognized that where one

7   cause may be covered but another is not, "the covered cause must provide the basis for a

8   cause of action in and of itself and must not require the occurrence of the excluded risk to

9   make it actionable."  *Am. Strategic Ins. Corp. v. Clark*, No. 1 CA-CV 12-0881, 2013 WL

10  6726264, at *5 (Ariz.App. Dec. 19, 2013), as amended (Jan. 6, 2014), *quoting American*

11  *Family Mut. Ins. Co. v. Schmitz*, 330 Wis.2d 263, 793 N.W.2d 111, 118 (Wis.Ct.App. 2010).

12  Indeed, the exception to Exclusion 4 specifically states it only applies if the water damage

13  cause is not otherwise excluded.  Coverage is not "reinserted" for an excluded loss simply

14  by the inclusion of the exception to Exclusion 4.  *Cooper v. Am. Fam. Mut. Ins. Co.*, 184

15  F. Supp. 2d 960, 964 (D. Ariz. 2002) (a resulting loss provision does not reinsert coverage

16  for excluded losses, but reaffirms coverage for secondary losses or injuries ultimately caused

17  by separate and independent excluded perils).

18         The Court finds Exclusion 3 excludes coverage for the losses suffered by Vasquez.

19

20  *The Policy – Exclusion 4*

21         Even if the Court did not find Exclusion 3 excluded coverage, a plain and ordinary

22  reading of Exclusion 4 would similarly exclude coverage.  The applicable portion of the

23  Exclusion states that Ameriprise will "cover loss caused by the water including the cost of

24  tearing out and replacing any part of a building necessary to *repair* the system or appliance."

25  DSOF, Ex. A (Doc. 17-1, p. 15 of 27), *emphasis added*.  As stated by another district court

26

27         [2]The Court references the ECF pagination in referring to the exhibits attached to the

28  DSOF in CV 07-326-FRZ-LAB.

judge in a similar case, Vasquez "elected to replace the plumbing system because [she was] concerned that leaks might recur. This concern appears to have addressed a latent or inherent defect in the system, which is not covered by the policy." *Bond v. American Family Ins. Co.*, 2008 WL 477873 *2 (D. Az. 2008).  A plain and ordinary meaning of the provision of the insurance agreement between the parties specifically limits the tear-out coverage to repair.  The Court does not agree with Vasquez that an expert opinion changes the plain and ordinary meaning of "repair," from the "standpoint of an average layman who is untrained in the law or the field of insurance."  *London Bridge Resort LLC*, 2020 WL 7123024 at *1.  The Court finds there is no material factual dispute at issue as to whether Exclusion 4 allows for coverage of Vasquez's losses.  Summary judgment in favor of Ameriprise and against Vasquez is appropriate.

Accordingly, IT IS ORDERED:

1. The Motion for Summary Judgment (Doc. 16) is GRANTED.  Summary judgment is entered in favor of Ameriprise and against Vasquez.

2. The Clerk of Court shall enter judgment and shall then close its file in this matter.

DATED this 30th day of March, 2021.

_____
Cindy K. Jorgenson
United States District Judge